**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 05-1810 |
| | : | (01-CR-00780) |
| **JMEAL COLLINS** | : | |
| | : | |

**MEMORANDUM AND ORDER**

**STENGEL, J.**                                                                                              December 19, 2007

Jmeal Collins is serving a 240 month sentence for a conviction under 18 U.S.C. § 922(g) as a felon in possession of a firearm. He filed this § 2255 petition for writ of habeas corpus based on a claim that he was denied effective assistance of counsel. I will deny Mr. Collins' habeas corpus petition.

**I.     Background**

On August 21, 2001, at approximately 9:35 a.m., the Philadelphia police dispatcher received a 911 call from Joyce Smith, who stated that "someone she knew" just left her house with a .45 pistol in his car. The dispatcher confirmed her address as 8310 Pickering Avenue, Apartment C; the person with the gun was Jmeal Collins. Ms. Smith asked the dispatcher not to reveal the source of the call because she feared for her safety if Mr. Collins knew she had reported him.

Ms. Smith stated that the .45 pistol was under the driver's seat of a 2000 black Lincoln, that the car did not have tags, but had a paper sticker in the window. She described the driver as a fair-skinned, heavy-set black male with a short haircut, wearing

a black shirt, green pants and black boots.  At approximately 9:41 a.m., the dispatcher conveyed this report to police patrol units.

Officers Jamanda Beard and Kevin Clanton were in uniform and in a marked police car when they heard the radio broadcast and immediately responded to the 8310 Pickering location.  There they observed the 2000 black Lincoln with a paper tag in the window.  The driver, and sole occupant, of the Lincoln fit the description from the radio dispatch.  When Officer Beard pulled the police car up behind the Lincoln, Mr. Collins moved his vehicle a few feet as if to pull away.  Officer Beard moved the police car on a diagonal in front of the Lincoln; she saw Mr. Collins moving his head up and down and bending towards the right side.

Officer Beard was concerned for her safety because of Mr. Collins movements while in the car.  Both officers drew their weapons and approached the vehicle.  Officer Clanton approached from the driver's side and directed Mr. Collins to show his hands.  Mr. Collins continued to move inside the car and would not show the officers his hands until the third or fourth directive.  Mr. Collins got out of the car with his head down; he continued to move his hands from his chest towards his lower body.

Officer Clanton told Mr. Collins to walk to the back of the car.  As Mr. Collins started to walk, he hastened his pace and reached below his long black shirt and into his waistband.  The police officers then saw Mr. Collins remove a silver handgun from his waistband with his right hand, throw the gun into the air and run.  Mr. Collins was then

-2-

apprehended a short distance away by Officer Beard when he tripped while attempting to run up a hill towards a nearby apartment building. Officer Clanton recovered the gun about four feet from Mr. Collins.

On December 18, 2001, the grand jury returned an indictment charging Mr. Collins with being a felon in possession of a loaded firearm and an armed career criminal in violation of 18 U.S.C. §§ 922 (g) and 924 (e). Prior to trial, Mr. Collins filed a motion to suppress the firearm based upon the reliability of the tip which led the police to his arrest. On April 24, 2002, the late Judge Jay Waldman held an evidentiary hearing and denied the defendant's motion. At trial, the jury found Mr. Collins guilty.

On September 20, 2002, Mr. Collins' trial counsel, Mr. Edson Bostic, filed a motion to withdraw as counsel. This motion was granted by Judge Waldman and on October 2, 2002, Christopher D. Warren, Esq. was appointed as Mr. Collins' new attorney. Mr. Warren represented Mr. Collins at the sentencing and on direct appeal. On November 26, 2002, Judge Waldman imposed a sentence of 240 months imprisonment, five years of supervised release and a special assessment of $100.

The Court of Appeals for the Third Circuit affirmed the judgment of the district court on April 22, 2004. Mr. Collins filed his § 2255 motion on April 20, 2005. On June 1, 2005, Mr. Collins filed a motion to amend his § 2255 motion.

Mr. Collins then filed a second § 2255 motion on September 19, 2005. The court appointed Kerry Kalmbach, Esq. to represent Mr. Collins. I held a hearing on Mr.

Collins' request for new counsel and I removed Mr. Kalmback and appointed Samuel C. Stretton, Esq. to represent Mr. Collins.  Finally, on July 11, 2007, Mr. Collins filed his most recent Amended Habeas Corpus Petition.  A hearing on the Amended Habeas Petition was held on September 20, 2007 and the parties have submitted briefs.

II.     Discussion

    A.     Legal Standard

A claim of ineffective assistance of counsel involves basically two elements: (1) counsel's performance must have been deficient, meaning that counsel made errors so serious that he was not functioning within the range of competence demanded of attorneys; (2) the deficiency must have prejudiced the defendant so severely that, but for counsel's unprofessional errors, the result of the proceedings probably would have been different.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  The court must consider the totality of the evidence in determining the extent of prejudice in a particular claim. Id. at 688.

    B.     **Counsel's failure to challenge the seizure of Mr. Collins' gun**

Petitioner contends that both his trial and appellate counsel were ineffective for not arguing that the seizure of the gun was unlawful under the case of United States v. Ubiles, 224 F.3d 213 (3d Cir., 2002).  In Mr. Collins' direct appeal, the Third Circuit noted that counsel for the first time on appeal was alleging that the police officers had no reason to suspect illegal activity.  Since this issue was not raised prior to the appeal it was waived.

Mr. Collins contends that if his counsel had relied upon the Ubiles case, the stop would have been ruled unlawful and Judge Waldman would have suppressed the gun. There is really no support for the assumption on which this argument is based. Petitioner ignores the need for this court to assume that Judge Waldman would have suppressed the gun if only Mr. Bostic had argued the Ubiles decision. Even if Ubiles had been featured by trial counsel at the suppression hearing, there is no basis here for the assumption that Judge Waldman would have followed Mr. Collins' suggested analysis.

The more immediate concern is that Ubiles simply does not control. In Ubiles, the police had an anonymous tip that Mr. Ubiles possessed a gun. The police stopped Mr. Ubiles at a public festival, frisked him and found a gun. The trial court denied his motion to suppress and Ubiles was convicted of possession of an unregistered firearm. The Third Circuit reversed his conviction. The court noted that "the anonymous tipster who approached the authorities had said nothing that would indicate that Mr. Ubiles possessed a gun unlawfully (without registration), that he was committing or about to commit a crime or that he posed a threat to the police or anyone else in the crowd." Id. at 214. In the Virgin Islands, possessing a firearm is not a crime. The Third Circuit found it significant that the "tip" did not actually concern illegal behavior.

Mr. Collins contends that Ubiles shall control because there is no evidence to indicate that he did not have a license to carry a firearm. The government notes that this licensing argument was already presented to Judge Waldman, who denied the defendant's

suppression motion after a hearing on April 23, 2002.

Mr. Collins' reliance on Ubiles is misplaced for several reasons. In Pennsylvania it is unlawful to carry or possess a firearm on a public street under 18 Pa. C.S.A. § 6108. Mr. Collins cites 18 Pa. C.S.A. § 6106, which does require the prosecution to prove that the person carrying the firearm was not licensed to do so, but fails to mention § 6108, which does not require proof of non-license by the prosecution. Mr. Collins' claim that Pennsylvania law regarding firearm possession is similar to the law of the Virgin Islands is simply wrong.

Further, this case contains additional pertinent facts supporting the informant's tip that were not present in Ubiles. In this case, two trained police officers responded to a radio dispatch about a man in a black Lincoln car in possession of a gun. The officers observed this man moving about inside the car. When the officers approached Mr. Collins and asked him to display his hands he failed to comply and kept moving his hands until this instruction was repeated three more times. After Mr. Collins got out of his car, he threw the gun and ran away from the officers. Under the totality of the circumstances, the officers had reasonable suspicion to suspect that criminal activity was afoot.

The government asserts that there was not a Terry[1] stop in this case until after the officers observed the discarding of the firearm. Since Mr. Collins never submitted to the police authority, he was never "stopped" within the meaning of the law. The government

---

[1] Terry v. Ohio, 392 U.S. 1 (1968).

argues that even where the police intend to stop and frisk a person, there is no seizure for purposes of the Fourth Amendment until the suspect is either physically restrained or submits to the show of police authority.  California v. Hodari D.,499 U.S. 622 (1991).  In this case, the government contends that the firearm is admissible because Mr. Collins never submitted to the show of police authority and was not seized until after he threw the gun.

The decision in Ubiles is distinguishable from this case since the gun laws in the Virgin Islands are different from the gun laws in Pennsylvania.  Under Pennsylvania law, these Philadelphia police officers had probable cause to stop Collins.  The Supreme Court of Pennsylvania has held that an officer's sighting of a person in possession of a firearm on a public street in Philadelphia provides probable cause to arrest for a violation of § 6108.  Commonwealth v. Romero, 673 A.2d 374 (Pa. Super. 1996).  A license to carry the firearm is an affirmative defense to a § 6108 arrest, but the police do not need to disprove this affirmative defense before making an arrest.  Mr. Bostic had no reason to rely upon Ubiles.  He was not ineffective for failure to raise an issue without legal merit.

Trial counsel's and appellate counsel's "failure" to seek the suppression of the firearm based on Ubiles does not meet the high standard for a successful ineffective assistance of counsel claim set forth in Strickland.  The fact that counsel did not rely upon one particular case does not make an attorney's effort deficient and certainly does not result in errors so serious that the lawyer was not functioning within the range of

competence demanded of attorneys.  Id. at 687.

    **C.**    **Mr. Collins' desire to testify at trial**

Jmeal Collins claims he wanted to testify at trial, but was repeatedly denied the opportunity by his counsel.  According to Mr. Collins, his counsel, Mr. Edson Bostic instructed him that he would "abandon the case" if he insisted on testifying.  Mr. Collins believes that he was coerced into not testifying as a result of those statements.

Petitioner's present counsel asserts that this was the very odd case where Mr. Collins should have testified.  Counsel notes that Judge Waldman allowed the letters that Mr. Collins sent to Joyce Smith from prison to be entered into evidence.  In these letters, Mr. Collins asked Ms. Smith to testify that he was in possession of the gun because he had just taken the gun from children on the street, presumably to protect them.  Thus, Mr. Collins defense was "necessity" and he needed to take the stand in order to establish that he possessed the gun solely for the safety of the children on the street.

At the habeas hearing on September 20, 2007, trial counsel Edson Bostic, Esq. testified that he advised Mr. Collins not to testify for three main reasons.  First, Mr. Bostic advised Mr. Collins that it would not be in his best interest to testify because his credibility could be damaged by cross-examination about the letters he sent to Ms. Smith describing how he came into possession of the gun.  Second, Mr. Bostic advised Mr. Collins that he could be impeached by questions about his prior criminal convictions, which included robbery and aggravated assault.  Finally, Mr. Bostic testified that Mr.

Collins initially told him a different story about coming into possession of the firearm. Because Mr. Collins was changing his story, Mr. Bostic had ethical concerns about presenting this new version of the story.  Mr. Bostic advised Mr. Collins, correctly, that he could not present the conflicting stories in the standard question and answer format, but could only call Mr. Collins to the stand to present his version of the events.  As a matter of trial strategy, Mr. Bostic did advise Mr. Collins that the defense of necessity could best be argued through the introduction of the letters during the cross-examination of Ms. Smith without any of the negative consequences that could and probably would result from Mr. Collins taking the stand.  Finally, Mr. Bostic contends that this topic was fully discussed with Mr. Collins and that he clearly agreed with counsel's recommendation that he not testify at the trial.

   Mr. Bostic is now the Chief Public Defender in the Federal Defender's Office in Wilmington, Delaware.  He served for ten years as an Assistant Public Defender in the Federal Defender's Office in the Eastern District of Pennsylvania.  He is an experienced criminal defense attorney.  Mr. Bostic has no reason to fabricate or stretch the truth and it would have been a much easier case for him to simply let Mr. Collins testify.  Further, Mr. Bostic testified in the habeas hearing that Mr. Collins never said, "I want to testify in this case" and the two never had an "argument" regarding Mr. Collins right to testify.  I found Mr. Bostic's testimony about his discussion with Mr. Collins and his advice to Mr. Collins to be very credible.  Mr. Collins' version of the story was difficult to believe on

its face and his testimony at the habeas hearing was less than credible.

There is no evidence to suggest that Mr. Bostic threatened to abandon Mr. Collins. Mr. Collins' self-serving statements at the September 20, 2007 hearing did not impeach Mr. Bostic's credible description of his discussion with Mr. Collins. Mr. Bostic acted in accordance with Pennsylvania's Professional Rule of Conduct 3.3(a)(3) by informing Mr. Collins that he would have to present his testimony in a narrative since Mr. Collins had given, by that time, three (3) different versions of the incident. Mr. Bostic's testimony that he did not threaten to abandon Mr. Collins if he elected to testify was completely plausible and supported by the record. Mr. Bostic's position and his credibility are further bolstered by the fact that the first time Mr. Collins mentioned his desire to testify was in his § 2255 motion, nearly two years after his trial.

Mr. Collins cannot satisfy the standard for ineffective assistance of counsel set forth in Strickland. Mr. Collins' legal strategy was reasonable and advising Mr. Collins not to testify while leaving the decision to Mr. Collins, did not result in deficient or prejudicial legal service.

### D. Trial counsel's failure to argue that the gun was not operable

Mr. Collins contends that the gun seized from him was not operable and could not easily be made operable. A ballistics expert, Mr. Kwong, affirms that Mr. Collins' gun would not fire and that it was missing a firing pin. Mr. Kwong stated the gun could be fixed, but that at the time it was recovered it was inoperable. Thus, Mr. Collins avers that

his gun does not fit the statutory definition of a firearm because it was not "readily converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3). He feels that trial and appellate counsel were ineffective for not raising this issue during the trial.

The government asserts that this claim is time-barred because it is being raised for the first time three years after Mr. Collins conviction became final. Furthermore, this issue does not relate back to any issue raised in his earlier timely § 2255 motion, so it is time-barred by the AEDPA.

The government also contends that even if this issue had been timely raised, it also lacks merit. Under 18 U.S.C. § 921(a)(3) the term "firearm" must be read in its entirety and in the disjunctive clause.

> The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver or any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

18 U.S.C. § 921(a)(3). The definition of a firearm relevant to this case is "any weapon which is designed to expel a projectile by the action of an explosive." Id. Under this definition, Mr. Collins was carrying a firearm. The case law is clear that a gun need not be operable to be considered a firearm under the statute. United States v. Theodoropoulus, 866 F.2d 587, 595, n.3 (3d Cir. 1987), overruled on other grounds, United States v. Price, 76 F.3d 526 (3d Cir. 1996).

-11-

This claim is time-barred because it was not raised within the one year required by the AEDPA and does not relate back to Mr. Collins' timely habeas petition.  Further, Mr. Collins was carrying a firearm as defined by 18 U.S.C. § 921(a)(3) and the fact that it was inoperable at the time it was recovered is irrelevant.  Therefore, trial and appellate counsel's representation was not deficient or prejudicial for they are not required to bring frivolous claims.

### III.   CONCLUSION

For the reasons stated above, I will deny Mr. Collins habeas petition.  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | CIVIL ACTION |
| | : | |
| **v.** | : | NO. 05-1810 |
| | : | (01-CR-00780) |
| **JMEAL COLLINS** | : | |

### **O R D E R**

**STENGEL, J.**

**AND NOW**, this 19th day of December, 2007, upon consideration of Petitioner's Amended Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Document #s 54,56), the government's response thereto, it is hereby **ORDERED** that such motions are **DENIED**.

The Clerk of the Court shall mark this case **CLOSED** for statistical purposes.

BY THE COURT:

/s/ Lawrence F. Stengel
LAWRENCE F. STENGEL, J.