## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
|---|---|---|
| | : | NO. 01-cr-780-1 |
| vs. | : | |
| | : | CIVIL ACTION |
| JMEAL COLLINS | : | NO. 05-cv-1810 |

## M E M O R A N D U M

STENGEL, C.J.                                                    January      , 2017

### I.    INTRODUCTION

Petitioner Jmeal Collins requests resentencing pursuant to the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2251 (2015). Johnson invalidated one specific clause of the Armed Career Criminal Act (ACCA) (18 U.S.C. § 924(e) (2012)) as unconstitutionally vague. Mr. Collins argues in his June 16, 2016 motion to correct sentence under 28 U.S.C. § 2255 that but for the application of the invalidated clause, his sentence would have been significantly shorter. I will grant Mr. Collins's motion to correct his sentence.

### II.    BACKGROUND AND PROCEDURAL HISTORY

The petitioner's underlying crime is a 2002 conviction by jury for one count of being a felon in possession of a firearm under 18 U.S.C. 922(g)(1), for which he was sentenced under §§ 922(g)(1) and 924(e) to twenty years imprisonment and five years supervised relief. At the time of his sentencing, Mr. Collins's presentence report classified him as an armed career criminal based on four previous violent felony convictions; this classification subjected him to the ACCA's sentence enhancement. The petitioner's four convictions were two first degree

robberies (18 Pa. C.S. § 3701(a)(1)(i)–(iii)(2017)) and two aggravated assaults (18 Pa. C.S. §

2702(a)(1)–(2) (2017)).[1]

Because Mr. Collins previously filed a habeas claim, he had to seek approval from the

Third Circuit to proceed with this successive petition, and the Third Circuit granted him that

permission on July 8, 2016. On Jan. 6, 2017, Mr. Collins filed an unopposed motion to lift the

administrative stay on cases seeking relief based on <u>Johnson</u>, implemented by then-Chief Judge

Petrese B. Tucker. On Feb. 2, 2017, I granted that motion. The government filed its response on

March 2, 2017, and Mr. Collins filed his reply on April 27, 2017.

## III.    LEGAL STANDARD

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging

the validity of his sentence. Section 2255 provides, in relevant part:

> A prisoner in custody under sentence of a court established by
> Act of Congress claiming the right to be released upon the
> ground that the sentence was imposed in violation of the
> Constitution or laws of the United States, or that the court was
> without jurisdiction to impose such sentence, or that the
> sentence was in excess of the maximum authorized by law, or
> is otherwise subject to collateral attack, may move the court
> which imposed the sentence to vacate, set aside or correct the
> sentence.

28 U.S.C. § 2255(a) (2012).

In considering a petitioner's motion for § 2255 relief, "the court must accept the truth of

the movant's factual allegations unless they are clearly frivolous on the basis of the existing

---

[1] In their briefings, Mr. Collins and the government both address these four state law convictions. However, the federal indictment (Doc. No. 1) lists only three predicate convictions, two for aggravated assault and one for robbery. The judgment for Mr. Collins's federal conviction (Doc. No. 41) does not list the specific predicate offenses that support the ACCA enhanced sentence. This incongruity between the indictment and the briefings regarding the number of convictions does not substantively impact this matter. For consistency throughout this memorandum, however, I will acknowledge *four* predicate convictions, as presented in both parties' briefs.

record." United States v. Booth, 432 F.3d 542, 545 (3d Cir. 2005) (quoting Gov't of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir. 1989)).

Section 2255 provides that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). Conversely, a court may dismiss a § 2255 motion where the records and files show conclusively that the movant is not entitled to relief. United States v. Nahodil, 36 F.3d 323, 326 (3d Cir. 1994).

## IV. DISCUSSION

### A. The Armed Career Criminal Act (ACCA)

In this case, I must determine whether Mr. Collins's prior state convictions have "as an element the use, attempted use, or threatened use of physical force," qualifying them as violent felonies under the ACCA and triggering his enhanced sentence. See § 924(e)(2)(B)(i). While this question may be stated easily, the application of the ACCA has become complex and murky.

The ACCA imposes a fifteen-year mandatory minimum sentence on any individual convicted under 18 U.S.C. § 922(g)[2] who also has three previous independent convictions "for a violent felony or a serious drug offense, or both" (each crime punishable by over a year imprisonment). § 924(e)(1). A § 922(g) offense otherwise typically carries a ten-year maximum. See § 924(a)(2). Where the prosecution seeks an ACCA sentence enhancement, the court must determine whether the defendant has three qualifying convictions. Therefore, in this case, the issue is whether the defendant's prior convictions qualify as ACCA "violent felonies."

---

[2] This statute prohibits the possession, transportation, and receipt of firearms by specified individuals.

The ACCA defines a "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year . . . that—
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*[.]

§ 924(e)(2)(B) (emphasis added).

This ACCA definition of "violent felony" contains three distinct clauses: the elements clause (subsection (i)), the enumerated offenses clause (the first clause of subsection (ii)), and the residual clause (the italicized portion of subsection (ii)).

The petitioner's case, and cases like it, stem from a 2015 U.S. Supreme Court decision that invalidated the residual clause, finding it unconstitutionally vague in violation of the right to due process of law. Johnson, 135 S. Ct. at 2557, 2563. The Johnson decision applies retroactively to cases on collateral review. Welch v. United States, 136 S. Ct. 1257, 1268 (2016).

In Mr. Collins's § 2255 motion, he argues that his prior robbery and aggravated assault convictions do not fit within the elements clause of the ACCA (the enumerated offenses clause does not encompass either of these convictions) and that his sentence is therefore unlawful. Now, after Johnson and Welch, courts examining these cases on collateral review must determine whether either of the two remaining ACCA clauses encompasses the offenses that triggered a petitioner's enhanced sentence.

1. **Divisibility**

To determine whether a statute qualifies as an ACCA predicate, a court must first determine whether the statute is divisible. A statute is divisible when it lists *elements* in the alternative. Mathis v. United States, 136 S. Ct. 2243, 2249 (2016); see also Descamps v. United

States, 133 S. Ct. 2276, 2298 (2013). Elements are items upon which a jury must agree in order to convict. See Mathis, 136 S. Ct. at 2249.

A statute is *indivisible* when its elements "define a single crime." Id. at 2248. This is true even when the statute "enumerates various factual *means* of committing a single *element*." Id. at 2249 (emphasis added). Means, unlike elements, need not garner jury unanimity. Id. If a statute is indivisible, the court must apply the categorical approach, discussed below. If the statute is *divisible* (lists alternative *elements*), the court must instead apply the modified categorical approach to determine whether an offense constitutes an ACCA "violent felony."

With that, a sentencing court dealing with an "alternatively phrased statute" must determine whether the alternative items are elements or means. Mathis, 136 S. Ct. at 2256. To decipher between means and elements, a court may look to the state statute and related case law. If, and only if, those sources prove indeterminate, a court may "peek" at record documents—and may do so *solely* to determine whether the statutory alternatives are means or elements. Id. at 2256–57.[3]

This restrained glance at the record should apply only in occasional and appropriate instances—it "should prove more the exception than the rule." Id. If after a "peek" at record documents, the means/elements inquiry remains unclear, then the sentencing court cannot satisfy the "demand for certainty" required to qualify an offense as an ACCA "violent felony." Id.

---

[3] Mathis provides the following example of such a "peek":

> Suppose, for example, that one count of an indictment and correlative jury instructions charge a defendant with burgling a "building, structure, or vehicle"—thus reiterating all the terms of Iowa's law. That is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt. . . .
> Conversely, an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime.

136 S. Ct. at 2257.

(quoting Shepard v. United States, 544 U.S. 13, at 21 (2005)) (quotation marks omitted). Record materials may not be used further in the analysis unless the "peek" definitively reveals the alternatives to be elements, and the modified categorical approach (discussed below) applies. Id. at 2253–54, 2257.

If a statute is indivisible (its alternative items are means), a court must apply the categorical approach. And if it is divisible (the alternatives are elements), the modified categorical approach applies. I will provide a discussion of each in turn.

## 2. Categorical Approach

Under the categorical approach, a court must examine whether an offense's statutory definition (*not* the particular facts of a case) constitutes a "violent felony" under the ACCA.[4] Id.; Taylor, 495 U.S. at 602. Now that Johnson has deemed the ACCA's residual clause unconstitutional, courts must apply the categorical approach to the enumerated offenses clause and/or the elements clause.[5] As noted above, neither robbery nor aggravated assault is an enumerated offense; accordingly, the analysis in this case will address only the elements clause.

---

[4] While this approach can at times feel counterintuitive because it requires courts to ignore facts, the U.S. Supreme Court in Johnson reiterated the "good reasons" why it remains the law of the land. Johnson, 135 S. Ct. at 2562 (citing Taylor, 495 U.S. at 599–602); see also Mathis, 136 S. Ct. at 2252–53. First, the plain language of the ACCA indicates that Congress intended sentencing courts to view the predicate crimes categorically and objectively, without examining the underlying facts. Johnson, 135 S. Ct. at 2562 (reasoning that the ACCA refers to an individual "who . . . has three previous convictions," not "who has committed" three applicable offenses) (quoting Taylor, 495 U.S. at 600) (internal quotation marks omitted). Congress intended the ACCA to "function as an on-off switch, directing that a prior crime would qualify as a predicate offense in all cases or in none." Descamps, 133 S. Ct. at 2287.
Second, Johnson emphasized the "utter impracticability of requiring a sentencing court to reconstruct, long after the original conviction, the conduct underlying that conviction." Johnson, 135 S. Ct. at 2562; see also Descamps, 133 S. Ct. at 2287; Mathis, 136 S. Ct. at 2253 ("Statements of 'non-elemental fact' in the records of prior convictions are prone to error precisely because their proof is unnecessary. . . . At trial, and still more at plea hearings, a defendant may have no incentive to contest what does not matter under the law."). Lastly, the "elements-centric" categorical approach avoids potential Sixth Amendment pitfalls that would arise from sentencing courts undertaking the jury's fact-finding role. See Descamps, 133 S. Ct. at 2287.
[5] The categorical approach applies to both clauses, though most precedent involves the enumerated offenses clause, which is not applicable here. See United States v. Singleton, 252 F. Supp. 3d 423, 428 (E.D. Pa. 2017) (citing United States v. Robinson, 844 F.3d 137, 142–43 (3d Cir. 2016)).

The elements clause "requires conduct by the defendant." United States v. Harris, 205 F.Supp. 3d 651, 663 (M.D. Pa. 2016). The clause's key term, "physical force," means "*violent* force—that is, force capable of causing physical pain or injury to another person." Johnson v. United States, 559 U.S. 133, 140 (2010) [hereinafter Johnson 2010]. Consequently, a court applying the categorical approach to determine whether a crime is a violent felony under the ACCA must examine whether a statute requires proof of "violent force" by the defendant as an element of conviction.

### 3. Modified Categorical Approach

The modified categorical approach only applies when the statute defining the offense is divisible. Descamps, 133 S. Ct. at 2281; United States v. Abbott, 748 F.3d 154, 157–58 (3d Cir. 2014). It is not an exception to the categorical approach; it serves as a "tool" for its implementation. Descamps, 133 S. Ct. at 2284–85. Where a statute is divisible and its elements describe separate offenses, pursuant to the modified categorical approach, a court may look to "documents like an indictment or plea agreement" to discern the elements of conviction, but a court may *not* look to the facts that support the conviction. Id. "In other words, the modified approach serves—and serves solely—as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque." Mathis, 136 S. Ct. at 2253.

In a case where the statute defining the ACCA predicate crime is divisible and where the defendant pleaded guilty to that offense, in order to determine the elements of conviction, the court may look only to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial

record of information." <u>Shepard</u>, 544 U.S. at 26; <u>see also</u> <u>Abbott</u>, 748 F. 3d at 158–59 (finding that the district court properly applied the modified categorical approach when it "looked to the charging document to determine which alternative element had been proved").

This limited, elements-based purview of the modified categorical approach takes into account that "the only facts the court can be sure the jury so found [or that the defendant pled guilty to] are those constituting elements of the offense—as distinct from amplifying but legally extraneous circumstances." <u>See</u> <u>Descamps</u>, 133 S. Ct. at 2288 ("Our modified categorical approach merely assists the sentencing court in identifying the defendant's crime of conviction, as we have held the Sixth Amendment permits."). <u>Descamps</u> noted that when a defendant pleads guilty, he waives his right to a jury trial on the elements of the crime charged. Therefore, whatever facts he admits on the record or omits therefrom "cannot license a later sentencing court to impose extra punishment." <u>Id.</u>

### B. Aggravated Assault

In Nov. 1991, the petitioner pleaded guilty to two counts of first degree aggravated assault, committed on Aug. 16, 1989 and Oct. 28, 1989.[6] (Petitioner's Mem. 21 (referencing Exs. B and C).) Because aggravated assault is not an ACCA enumerated offense and because <u>Johnson</u> invalidated the residual clause, a court must analyze whether it qualifies as a "violent felony" under the elements clause. <u>See</u> § 924(e)(2)(B)(i).

In Pennsylvania, a person is guilty of first degree aggravated assault if he or she:

---

[6] The petitioner correctly states that although he pled guilty to multiple counts of first degree aggravated assault for each incident, each incident only counts as one potential ACCA predicate offense. <u>See</u> 18 U.S.C. § 924(e)(1) (stating that the offenses must be "committed on occasions different from one another"). The government agrees. (Gov.'s Resp. 5 n.3.)

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

(2) attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c) or to an employee of an agency, company or other entity engaged in public transportation, while in the performance of duty . . . .

18 Pa. C.S. § 2702(a)(1)–(2).[7]

## 1. Divisibility

As a threshold matter, we must decide whether aggravated assault is divisible. Courts have consistently held that the Pennsylvania aggravated assault statute is divisible because its subparts criminalize "different conduct, with different elements that need to be met, rather than listing different means of meeting the same elements." United States v. Lewis, 15-cr-368, 2017 WL 368088, at *2 (E.D. Pa. Jan. 25, 2017); see also United States v. Weygandt, CR No. 9-324, 2017 WL 818844, at *1 (W.D. Pa. Mar. 2, 2017) (finding that the Pennsylvania aggravated assault statute is divisible); United States v. Fisher, 01-769-01, 2017 WL 1426049, at *4 (E.D. Pa. Apr. 21, 2017) (same). I will follow this line of cases and find that the Pennsylvania aggravated assault statute is divisible and subject to the modified categorical approach. See Mathis, 136 S. Ct. at 2248 (stating that where a statute's subparts require satisfaction of different elements for conviction, that statute is subject to the modified categorical approach).

## 2. Modified Categorical Approach

---

[7] The petitioner notes that the aggravated assault statute was modified in 2013 but that the modification is not relevant here. The modification added a subsection of first degree aggravated assault—§ 2702 (a)(9), which involves the aggravated assault of a child under thirteen—but that subsection was added long after the crime and is irrelevant here; therefore, it is omitted from this analysis. (See Petitioner's Mem. 22 n.13.)

The petitioner submits that the "relevant bills of information and written guilty plea colloquy" do not indicate the subsection under which he pleaded guilty. (Petitioner's Mem. 22 n.14.) Conversely, the government contends that the "criminal information for the August 1989 assault charged Collins with violating subsection (1) . . . . [and the] charging documents for the October 1989 assaults also show that Collins was charged with violating subsection (1) . . . ." (Gov.'s Resp. 5 (citing Petitioner's Mem. Ex. B).) The government notes that all of the aggravated assault provisions except subsection (1) are crossed out on the charging documents.[8] (Id. at 5 n.2.) Where the petitioner pleaded guilty to a divisible offense, a court may look to certain documents in order to determine the elements of the offense. Shepard, 544 U.S. at 26 (stating that courts may look only to "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of information.").

After a close review of the documents the parties reference, I find it unclear which subsections the petitioner pleaded guilty to, and the cross-outs on the charging documents only add to the confusion. For instance, on the charging document for the Aug. 1989 incident, the aggravated assault count corresponding with subsection (2) of the statute is indeed crossed out, while the count corresponding with subsection (1) remains, as the government noted. (Petitioner's Mem. Ex. B.) However, the charge corresponding with subsection (4) of section 2702, second degree aggravated assault, is also *not* crossed out. (Id.) In the petitioner's written guilty plea colloquy, he pleaded to multiple first degree

---

[8] The charging documents also contain three charges relating to simple assault, none of which are crossed out, but those are not at issue here, so I will not include them in the discussion. (Petitioner's Mem. Ex. B.)

aggravated assault charges but not second degree aggravated assault. Read together, these documents do not clarify the subsections the petitioner pleaded guilty to.

Regarding the Oct. 1989 aggravated assault, the charging documents that the petitioner included as exhibits both have strike-throughs across all first degree aggravated assault counts except the count corresponding with subsection (1). Yet, one of the two court documents relating to the Oct. 1989 incident and recording the petitioner's plea state that the plea was for "simple assault only"—despite that the charge for subsection (1) aggravated assault was not crossed out on either charging document.[9] (Petitioner's Mem. Ex. C.)

What is more, the two court documents recording the plea from the Aug. 1989 assault also state that the plea relates to "simple assault only," despite that the charging documents list aggravated assault charges that are not crossed out.[10] The one court document recording a plea that does not say "simple assault only" is from the Oct. incident, and it does not specify the charge to which the petitioner pleaded. But it does state the same sentence range as the other court documents: seven and a half year minimum, twenty year maximum. However, as noted above, in his written guilty plea colloquy, the petitioner pleaded guilty to multiple counts of aggravated assault, in addition to simple assault and multiple other charges. In conclusion, the record does not make it clear to which subsection of aggravated assault the petitioner pleaded guilty, in either of the two incidents.

---

[9] I will note that the petitioner is not claiming that he did not plead guilty to this aggravated assault charge. I only intend to show that the documents are unclear as to the elements of the crime of conviction.

[10] I note this only to show that the record documents are confusing and inconclusive, not to show that the petitioner only pled to simple assault. His pending motion does not argue that, nor is it supported by his written guilty plea colloquy in which he pleaded to multiple counts of first degree aggravated assault. (Petitioner's Mem. Ex. B, C.)

Where nothing in the record definitively indicates the specific subsection of a conviction, a court applying the modified categorical approach may only look at "the least of the acts that would support a conviction" to determine whether the statute qualifies as an ACCA predicate offense. Fisher, 2017 WL 1426049, at *5 (quoting Harris, 205 F. Supp. 3d at 652). In this case, as in Fisher, there is no clear indication as to the subsection of the aggravated assault conviction. Therefore, pursuant to the modified categorical approach, we must analyze the least of the acts that would support a conviction to determine whether the Pennsylvania first degree aggravated assault statute qualifies as an ACCA violent felony.

The first subsection, § 2702(a)(1), "can be committed by an act of omission" and is therefore the "least of the acts" and the subject of this analysis under the modified categorical approach. See Fisher, 2017 WL 1426049, at *5 (quoting Harris, 205 F. Supp. 3d at 671–72). Though the petitioner in this case does not differentiate among the statute's subsections in his argument,[11] he contends that first degree aggravated assault is not an ACCA "violent felony." (Petitioner's Mem. 23.) Mr. Collins notes that the statute does not include force as an element but instead requires the causation of "serious bodily injury." (Petitioner's Mem. 24–26); see 18 Pa. C.S. § 2702(1)–(2). He argues that people can be, and have been, convicted of first degree aggravated assault in Pennsylvania for crimes that do not involve force, such as child neglect, poisoning, and certain instances of arson—activities "far removed from the type of violent gun crimes that the ACCA is

---

[11] The petitioner does not take a position as to whether the Pennsylvania first degree aggravated assault statute is divisible. He states: "[D]ivisibility is not material here. The two subsections are the same for the purpose of determining whether, under the categorical approach, they are crimes of violence under the ACCA." (Petitioner's Mem. 22.)

meant to encompass." (Petitioner's Mem. 24–26 (citing <u>Begay v. United States</u>, 553 U.S. 137, 146–47 (2008).)[12]

The government argues that the element of causing "serious bodily injury" necessarily qualifies subsection (1) as an ACCA "violent felony." (Gov.'s Resp. 7 (citing <u>Johnson 2010</u> at 140; <u>United States v. Castleman</u> 143 S. Ct. 1405 (2014)). However, both <u>Johnson 2010</u> and <u>Castleman</u> fail to support the government's argument.

As noted above, <u>Johnson 2010</u> instructs that "*physical* force," as used in the elements clause of the ACCA, means "*violent* force—that is, force capable of causing physical pain or injury to another person." <u>Johnson 2010</u> at 140. The government argues that "[c]ausing or attempting to cause serious bodily injury plainly involves 'physical force' as defined in *Johnson 2010*." (Gov.'s Resp. 7 (citing <u>Johnson 2010</u> at 140).) I disagree with this conclusion because of the high bar <u>Johnson 2010</u> sets for a statute to qualify as an ACCA "violent felony."

The Court in <u>Johnson 2010</u> stated that "[e]ven by itself, the word 'violent' in § 924(e)(2)(B) connotes a substantial degree of force . . . . When the adjective 'violent' is attached to the noun 'felony,' its connotation of strong physical force is even clearer." <u>Johnson 2010</u> at 138, 140 (reversing an Eleventh Circuit holding that a Florida battery statute prohibiting "*any* intentional physical contact, 'no matter how slight,'" qualifies as a violent felony). The government's conclusive statement that causation of bodily injury

---

[12] <u>Begay</u> describes the ACCA's "basic purposes" as follows:

> As suggested by its title, the Armed Career Criminal Act focuses upon the special danger created when a particular type of offender—a violent criminal or drug trafficker—possesses a gun. . . . In order to determine which offenders fall into this category, the Act looks to past crimes. This is because an offender's criminal history is relevant to the question whether he is a career criminal, or, more precisely, to the kind of degree of danger the offender would pose were he to possess a gun.

<u>Begay</u>, 553 U.S. at 146 (citation omitted).

"plainly involves" violent force, as defined in Johnson 2010, deflates the Court's strong language and stringent standard for ACCA "violent felonies."

Castleman similarly fails to support the government's argument. The government misreads Castleman and takes a key passage out of context when it states: "In *Castleman*, the Court explained that 'the knowing or intentional causation of bodily injury necessarily involves the use of physical force.'" (Gov.'s Resp. 9 (quoting Castleman 134 S. Ct. at 1414).) The Court in Castleman took pains to clarify that the term "physical force" has two definitions—the common law definition (applicable in most circumstances) and the ACCA's own distinct definition. Common law physical force (meaning "offensive touching") is inapplicable in the ACCA context. See Castleman 134 S. Ct. at 1414; see also Fisher, 2017 WL 1426049, at *6 (classifying the government's similar arguments based on Castleman as "misplaced"). The Court explained that the common law meaning of force ("offensive touching," which appropriately defines "physical force" in the domestic violence context) is a "comical misfit" with the term "physical force" in the ACCA elements clause, used to define "violent felonies" (crimes that trigger the ACCA sentence enhancement). Castleman, 134 S. Ct. at 1410. Castleman reiterated Johnson 2010's definition of ACCA-applicable "physical force" as "violent force." Id.

Further, Castleman explicitly avoided addressing the parties' issue: whether "the causation of bodily injury necessarily entails violent force". Id. at 1413. In Castleman, the petitioner was convicted of "'intentionally or knowingly caus[ing] bodily injury to' the mother of his child," in violation of Tennessee law. Id. at 1409. The issue was whether that conviction constituted a "misdemeanor crime of domestic violence" under 18 U.S.C.

§ 922(g)(9), which makes it unlawful for a person convicted of a qualifying crime to ship, transport, or receive firearms. The term "misdemeanor crime of domestic violence" is defined in 18 U.S.C. § 921(33)(A) as having "an element, the use or attempted use of *physical force*, or the threatened use of a deadly weapon," and the common law definition of force applies. § 921(33)(A) (emphasis added).

Turning towards ACCA cases that are more instructive, in <u>Harris</u>, the defendant argued (as Mr. Collins argues) that none of the alternative elements of the Pennsylvania aggravated assault statute qualify as violent felonies. 205 F.3d at 668. As in Mr. Collins's case, the defendant in <u>Harris</u> argued that bodily injury does not necessarily require physical force. <u>Id.</u> The court in <u>Harris</u> found that aggravated assault under § 2702(a)(1) can be committed by an act of omission (whereas <u>Castleman</u> only dealt with indirect use of force). <u>Id.</u> at 671 (citing <u>Commonwealth v. Thomas</u>, 867 A.2d 594, 597 (Pa. Super. Ct. 2005) (finding that an aggravated assault conviction in Pennsylvania does not require proof of the use of force or threat of force)). <u>Harris</u> unequivocally concluded that aggravated assault under § 2702(a)(1) is "categorically not a violent felony" because it does not require the use of force. <u>Id.</u> at 672; <u>see also</u> <u>Fisher</u>, 2017 WL 1426049, at *4 (noting that <u>Castleman</u> "involved the interpretation of 'use of physical force' set forth in the definition of misdemeanor crime of violence' in a different statute, 18 U.S.C. § 921(a)(33)(A)(ii)." (quoting <u>United States v. Hill</u>, 225 F. Supp. 3d 328, 338 (W.D. Pa. 2016)) (internal quotation marks omitted)).

Given that <u>Johnson 2010</u> and <u>Castleman</u> fail to support the government's argument, and that <u>Harris</u> and <u>Fisher</u> directly support a finding that aggravated assault in

Pennsylvania does not necessarily involve violent force, I find that aggravated assault is not a violent felony as defined by the ACCA's elements clause.[13]

### C. First Degree Robbery

Mr. Collins has two first degree robbery convictions—one for a Sept. 5, 1984 incident for which a jury found him guilty (Petitioner's Mem. Ex. A) and another for a June 11, 1991 incident for which he pleaded guilty (Id. Ex. D). On the charging document for the 1984 incident, the charge corresponding with subsection (1) of the statute is crossed out. (Id. Ex. A.) On the criminal information for the 1991 incident, no subsections are crossed out. (Id. Ex. D.) It is not clear from the record under which subsection Mr. Collins was convicted for either incident—and neither the petitioner nor the government argue that it is. As with the petitioner's aggravated assault charges, the cross-out on the criminal information for the 1984 robbery is of undeterminable significance, and therefore I cannot treat it as determinative of anything. Like aggravated assault, robbery is not an ACCA enumerated offense; therefore my analysis rests on the elements clause.

### 1. Divisibility

In analyzing whether the Pennsylvania first degree robbery statute qualifies as an ACCA predicate offense, we must first determine whether the statute is divisible before applying either the categorical or modified categorical approach. See United States v. Singleton, 252 F. Supp. 3d 423, 428 (E.D. Pa. 2017) (citing Robinson, 844 F. 3d at 142–43). Based on the analysis set forth below, I find that the Pennsylvania robbery statute is not divisible.

The statute provides three alternative ways to commit first degree robbery:

---

[13] The petitioner also argues that the Pennsylvania aggravated assault statute does not qualify as an ACCA violent felony because it does not require intentional action and may be satisfied by recklessness. (Petitioner's Mem. 26–27.) Having found that the statute does not qualify as a predicate offense based on the petitioner's first argument, I will not address this second argument.

(1) A person is guilty of robbery if, in the course of committing a theft, he:
> (i) inflicts serious bodily injury upon another;
> (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;
> (iii) commits or threatens immediately to commit any felony in the first or second degree;

Pa. C.S. § 3701(a)(i)–(iii).[14]

A divisibility determination hinges on whether the items listed in the alternative are means or elements. See Mathis, 136 S. Ct. at 2256–57. If they are elements, the statute is divisible; if means, indivisible. Singleton breaks down the Mathis analysis into four concise and independent considerations for determining whether alternatives are means or elements. See Singleton, 252 F. Supp. 3d at 429 (citing Mathis, 136 S. Ct. at 2256–57).  First, a court may look to a state court decision. Id. (citing Mathis, 136 S. Ct. at 2256). Second, the statute itself may resolve the issue by its language, where it provides different penalties for alternative violations. Id. (citing Mathis, 136 S. Ct. at 2256). Third, a statute may identify the items that must be charged to the jury, thereby deeming those elements. Id. (citing Mathis, 136 S. Ct. at 2256). And lastly, if the first three inquiries have been exhausted and the means/elements determination remains unclear, a court may "conduct a limited review" of the record documents (a "peek" at them) to determine whether the alternatives are elements or means. Id. (citing Mathis, 136 S. Ct. at 2256–57).

Mr. Collins argues that the Pennsylvania robbery statute is indivisible and that its alternatives are means, not elements. (Petitioner's Mem. 8–12.) I agree. First, I will discuss why the government's argument fails, then I will analyze why Mr. Collins' viewpoint has merit.

---

[14] The petitioner notes that the robbery statute has not been amended since 1976; he committed robberies in 1984 and 1991. (Petitioner's Mem. 8.)

The government argues that the Pennsylvania robbery statute is divisible, relying on United States v. Blair, 734 F.3d 218 (3d Cir. 2013). In Blair, the Third Circuit called the Pennsylvania robbery statute "obviously divisible" based on its "clearly laid out alternative elements." 734 F. 3d at 225. While this language seems to blatantly bolster the government's argument, it would be incorrect to take it at face value, not only because the statement is conclusive but also because three years after Blair, the Supreme Court imparted a much more rigorous divisibility examination in Mathis.

Turning to the four Mathis considerations, the first consideration calls upon courts to examine state case law to analyze divisibility. In Singleton, the court found that the limited body of Pennsylvania case law that speaks to the divisibility of the robbery statute "lends support for the view that § 3701(a)(i)–(iii) is commonly treated as indivisible." Singleton, 252 F. Supp. 3d at 431 (citing Commonwealth v. Payne, 868 A.2d 1257 (Pa. Super. Ct. 2005)). The Pennsylvania Superior Court in Payne noted that the jury had been instructed on both of the first two robbery subsections and had reached a verdict that was not specific to one or the other. 868 A.2d at 1262. Therefore, Payne demonstrates "that if a robbery is charged under more than one subsection, jurors need not agree on *which* subsection applies—so long as they agree that at least one does." Singleton, 252 F. Supp. 3d at 431.

A state case cited in the government's brief (and discussed but not relied upon in Singleton), Commonwealth v. Neal, seems to cut the other way, albeit less persuasively. 418 A.2d 378 (1980) (cited in Gov.'s Resp. 21). In Neal, the appellant successfully challenged his robbery conviction because the trial court amended the indictment (changing the charge from subpart (iii) to subpart (ii)) to conform to the evidence presented at trial. Id. at 379–80. The court reasoned that the original and amended indictments "cannot be said to have charged the same

particular offense, as each indictment would require the proof of different elements," seemingly

indicating that the subsections contain different elements. Id. at 380. However, Neal carries less

weight than Payne on the issue of divisibility first because it did not fully analyze the issue, and

secondly because its holding rested on the fact that the evidence did not conform to the charge

listed on the original indictment, not on the issue of divisibility—an important distinction. Id. In

other words, Neal did not consider whether "a jury charged under *multiple* subsections . . . must

*necessarily* and *unanimously* agree which subsection applies to reach a verdict of guilty," and its

applicability to this case is therefore limited. Singleton, 252 F. Supp. 3d at 431 (discussing the

limited applicability of Neal).[15]

Regarding Mathis's second consideration, the Pennsylvania robbery statute on its face

does not provide guidance as to whether the alternative items are means or elements. It simply

lists the alternatives without qualification. Mathis, 136 S. Ct. at 2256; see also Singleton, 252 F.

Supp. 3d at 431.

Mathis's third consideration, whether a statute identifies the items that must be charged to

the jury, is somewhat more helpful here. Singleton interprets this third Mathis guidepost to

include the Pennsylvania Suggested Standard Criminal Jury Instructions. See Singleton, 252 F.

Supp. 3d at 432 (citing 2 Pennsylvania Suggested Standard Criminal Jury Instructions §

15.3701A (3d ed.) (Pa. Bar Inst. 2016)); see also United States v. Steiner, 847 F.3d 103, 119 (3d

Cir. 2017) (considering the Pennsylvania Suggested Standard Criminal Jury Instructions in

analyzing whether the Pennsylvania burglary statute is divisible and finding that it is not

divisible); Harris, 205 F. Supp. 3d at 667 (same). I will consider the standard jury instructions in

this case as well because they are highly persuasive and help clarify whether robbery is divisible.

---

[15] Along the same lines, I do not follow Harris's conclusion on the divisibility of the robbery statute. That case treated the statute as divisible on the sole basis that the parties agreed that it was, without any analysis at all. See Harris, 205 F. Supp. 3d at 673 (M.D. Pa. 2016).

The Pennsylvania Suggested Standard Criminal Jury Instructions break robbery into two elements. The first element lists the subsections of the statute in the alternative.[16] § 15.3701A. The second element requires that the first element was committed "during the course of committing a theft." Id. Considering this presentation in the suggested jury instructions, a jury considering a robbery case need not unanimously agree which subsection the defendant violated.

Further evidencing that the Pennsylvania robbery statute is indivisible, Singleton notes that jury charges and plea documents are commonly "entirely unclear" as to which specific subsection is at issue. Singleton, 252 F. Supp. 3d at 432. Such is the case here. Both the petitioner's Sept. 5, 1984 conviction by jury (Petitioner's Mem. Ex. A.) and his June 11, 1991 guilty plea (Id. Ex. D) fail to distinguish among subsections of the robbery statute. For both offenses, the charging document, court documentation, and the written guilty plea colloquy merely state the charge as first degree felony robbery, without elaboration or specification. Based on this lack of specificity and the above analysis, I find that the Pennsylvania robbery statute is not divisible.

### 2. Categorical Approach

Having determined that the Pennsylvania robbery statute is indivisible, I must apply the categorical approach to determine whether the statute qualifies as a violent felony under the ACCA. Based on the following analysis, the Pennsylvania robbery statute does not qualify as an ACCA predicate crime.

In Singleton, the government conceded and the court agreed that § 3701(a)(1)(iii) does not require force because certain felonies can be nonviolent. Because it was unclear under which subsection the defendant was convicted, the court concluded that the statute did not qualify as an

---

[16] In certain cases, only one subsection is charged—but that does not determine whether the alternatives are means or elements. See Singleton, 252 F. Supp. 3d at 432.

ACCA predicate offense. <u>Singleton</u>, 252 F. Supp. 3d at 432–33, 436. The petitioner in this case makes the same argument and refers to several examples of nonviolent felonies that would satisfy subsection (iii), including forgery (18 Pa. C.S. § 4101) and identity theft (18 Pa. C.S. § 4120). The government concedes that § 3701(a)(1)(iii) does not "necessarily involve the requisite use of force under ACCA." (Gov.'s Resp. 19.) Considering all of this, I find that § 3701(a)(1)(iii) does not require the use of physical force as required by the elements clause of the ACCA. Following the categorical approach, the statute therefore cannot qualify as an ACCA predicate offense.

Because neither the Pennsylvania statute prohibiting aggravated assault nor robbery qualifies as an ACCA "violent felony" under the elements clause, I will grant Mr. Collins's motion to correct his sentence and will resentence him accordingly.